UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 18cr10307 |
| | ) | |
| | ) | VIOLATIONS: |
| v. | ) | |
| | ) | Embezzlement from an Agency |
| | ) | Receiving Federal Funds |
| DAREN DEJONG, | ) | (18 U.S.C. § 666(a)(1)(A)) |
| | ) | |
| Defendant. | ) | Aiding and Abetting |
| | ) | (18 U.S.C. § 2) |
| | ) | |
| | ) | Forfeiture Allegation |
| | ) | (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. |
| | ) | § 2461(c)) |

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment:

1. Troop E was an operational division of the Massachusetts State Police ("MSP"), the law enforcement agency for the Commonwealth of Massachusetts. Among other duties, Troop E was primarily responsible for enforcing criminal law and traffic regulations on Interstate-90, the Massachusetts Turnpike ("I-90"), which spans the Massachusetts/New York border to the Boston Harbor. Troop E headquarters was located in South Boston, and additional Troopers within Troop E were stationed at four barracks located in Weston, Charlton, Westfield, and near the Boston Tunnels.

2. In addition to their salary for a regular 8-hour work shift, Troopers within Troop

1

E were able to earn overtime pay equivalent to 1.5 times their regular hourly pay rate for various overtime assignments. Beginning by at least January 2016, Troop E Troopers could earn overtime pay by signing up for and working selective enforcement initiatives known as "AIRE" (Accident and Injury Reduction Effort) and "X-Team." The objective of the AIRE and X-Team programs was to reduce accidents, crashes, and injuries on I-90 through an enhanced presence of MSP Troopers patrolling I-90 and targeting vehicles traveling at excessive speeds.

3. All AIRE shifts were four hours long and were organized by letter according to a specific shift: A-AIRE from 7:30 a.m. to 11:30 a.m.; B-AIRE from 11:00 a.m. to 3:00 p.m.; C-AIRE from 3:30 p.m. to 7:30 p.m.; and D-AIRE for 7:00 p.m. to 11:00 p.m. Prior to each AIRE shift, Troopers were deployed to a particular sector of I-90.

4. X-Team shifts were generally comprised of two troopers working eight hour overtime shifts.

5. To earn AIRE and X-Team overtime pay, Troopers were required to work the duration of the 4-hour AIRE shift, or 8-hour X-Team shift, and conduct traffic enforcement on I-90 by issuing summonses, citations, and warnings during the shift. In the event that inclement weather rendered Turnpike traffic stops unsafe during an AIRE or X-Team shift, Troopers were to contact the Troop E desk officer in order to be re-deployed to another sector of I-90, as necessary.

6. As part of the AIRE and X-Team overtime shift duties, Troopers were required to truthfully and accurately report, among other things, the date and time of the shift worked, the sector of deployment, and the traffic citations issued during the AIRE and X-Team shifts.

7. DAREN DEJONG ("DEJONG") was an MSP Trooper assigned to Troop E. In

or about 2016, DEJONG's total MSP compensation was approximately $200,416, which included approximately $68,394 in overtime pay, a portion of which included pay for AIRE and X-Team overtime shifts.

8.  As an MSP Trooper in Troop E, DEJONG regularly received Troop E memorandums, policies, and protocols that instructed Troop E personnel as to AIRE and X-Team assignment requirements, including the 4-hour AIRE shift duration requirement, the 8-hour X-team duration requirement, and paperwork reporting responsibilities.

### The MSP Received Federal Funds

9.  The United States Department of Transportation ("DOT") was an agency of the United States that provided hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities that enforce traffic regulations on public roadways, including the MSP.

10. For the calendar year 2016, the MSP received annual benefits from the DOT in excess of $10,000. DOT provided these funds through numerous federal grants.

### The Defendant's Fraud Scheme

11. In or about 2016, DEJONG signed up for and received overtime pay for approximately 164 AIRE overtime shifts and approximately 15 X-Team overtime shifts. On a regular basis during this period, DEJONG purposefully departed his AIRE overtime shift from one to three hours early and thus did not work the entire 4-hour shift and/or purposefully departed his X-Team overtime shifts from one to seven hours early. On several occasions, DEJONG signed up for and received AIRE and/or X-Team overtime pay without showing up to work for the given AIRE and/or X-Team shift at all.

12. In order to conceal the fraud, DEJONG fabricated and submitted fraudulent traffic

3

citations to create the appearance that he had (i) worked a 4-hour AIRE shift and/or 8-hour X-Team shift; and (ii) made traffic stops and issued traffic citations during a given AIRE and/or X-Team overtime shift, when, in fact, he had not.   DEJONG also made numerous false statements to the MSP on internal MSP paperwork representing to MSP that DEJONG had worked AIRE and X-Team overtime hours that he had not.   DEJONG made additional false statements in the MSP payroll system, representing to the MSP that DEJONG had worked AIRE and X-Team overtime hours that he had not.

13.     From at least as early as January 2016 through in or about December 2016, DEJONG caused the MSP to pay in excess of $5,000 in AIRE and X-Team overtime pay to DEJONG for AIRE and X-Team hours that DEJONG did not actually work.

## COUNT ONE
(Embezzlement from an Agency Receiving Federal Funds –
18 U.S.C. § 666(a)(1)(A)); Aiding and Abetting – 18 U.S.C. § 2)

14. Paragraphs 1 through 13 of this Indictment are incorporated by reference herein.

15. From at least in or about January 2016 to in or about December 2016, in the District of Massachusetts,

### DAREN DEJONG

defendant herein, being an agent of an organization, namely, the MSP, embezzled, stole, obtained by fraud and otherwise without authority knowingly converted to the use of a person other than the rightful owner and intentionally misapplied, property valued at $5,000 and more that was owned by, and was under the care, custody, and control of the MSP, an organization that received in excess of $10,000 in federal program benefits, funded by DOT, in any one-year period, that is between in or about January 2016 and in or about December 2016.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## FORFEITURE ALLEGATIONS
## (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

1.      Upon conviction of the offense charged in Count One of this Indictment, the defendant,

## DAREN DEJONG

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense.

2.      If any of the property described in paragraph 1 hereof as being forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant --

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred to, sold to, or deposited with a third party;

   c.   has been placed beyond the jurisdiction of this Court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

A TRUE BILL

*Mary Blendell*
FOREPERSON OF THE GRAND JURY

*[signature]*
Mark Grady
Dustin Chao
Neil Gallagher
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS; September 6, 2018.

Returned into the District Court by the Grand Jurors and filed.

*Thomas [signature]*  9/6/2018
DEPUTY CLERK