UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket No. 1:18-cr-10307-MLW |
| DAREN DEJONG | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SUPPLEMENTAL MEMORANDUM
IN AID OF SENTENCING**

Defendant Daren DeJong ("DeJong"), by and through undersigned counsel, submits this supplemental memorandum in aid of sentencing.  DeJong respectfully reiterates, for the reasons set forth in his first sentencing memorandum, and for the additional reasons set forth herein, that a sentence of a one (1) year term of probation, to include as specific conditions that he serve six (6) months in home confinement along with the payment of mandatory restitution in the amount of $14,062.50, is "sufficient, but not greater than necessary" to achieve the purposes of the Sentencing Reform Act.

**ARGUMENT**

I.    **Loss Adjustments**

a.    **Objection to Inclusion of Loss for 2013, 2014 and 2015**

To calculate loss for the count of conviction (i.e. offense conduct occurring within 2016), the government used a combination of fuel records, payroll records, cruiser radio data, AIRE activity cards and officer-in-charge reports. The cruiser radio data, for example, was used to

determine the number of hours *actually* worked. These figures were then compared against the payroll records for the trooper believed to be assigned to that particular cruiser to determine the amount of hours claimed. The government then assigned a loss to that trooper for any day where the number of hours actually worked (per the cruiser radio data) was less than the number of hours claimed. The latter two (2) categories of records, however, were not available when the government conducted its analyses for 2013, 2014 and 2015. In a related sentencing proceeding before the Hon. Douglas P. Woodlock, *see U.S. v. Paul Cesan*, 18-cr-10383-DPW, the government described these missing data points as "critical" to its ability to accurately determine which officer was operating a particular cruiser. *See Cesan Sentencing Tr.* at 8. After also learning there were "instances in the investigation where individuals kept using old gas cards from other cruisers," *id.* at 5-6, and that "prosecutorial choices" were being made in light of the availability of those additional data sets for 2016, Judge Woodlock stated he "would feel very uncomfortable assigning additional loss" for 2015 where those same data sets were not available. *Id.* at 9. As a result, loss for 2015 was not assigned for purposes of relevant conduct in *Cesan*. *Id.* The same data sets which were not available in *Cesan* for 2015 were similarly not available here relative to DeJong in 2013-2015. For the same reasons relied upon by Judge Woodlock to exclude 2015 from *Cesan's* loss calculations, undersigned counsel respectfully requests that this Honorable Court exclude 2013-2015 from DeJong's loss calculations here.[1]

---

[1] Undersigned counsel also respectfully note their concerns about the manner in which the 2013/2014 records were stored and located, to the extent it may further diminish their reliability. The government long-since subpoenaed the Massachusetts State Police for the records at issue; it appeared that records from 2013/2014 could not be located. As recently as June of this year, however, the MSP reported to the government it had "discovered" a "number of boxes" with these materials. What has not been reported is how these materials were discovered, who discovered them, why they were not previously located, or what state these materials were in when they were discovered. Based on both the nature and timing of this "discovery," it is

### b. Attribution of Loss for Lieutenants A, B and C.

At the time of DeJong's original sentencing hearing, this Court raised concerns it had that statements DeJong made during his proffer with the Massachusetts Attorney General's Office might implicate him in the attribution of loss associated with Lieutenants A, B and C. It is respectfully submitted the loss associated with these other lieutenants should not be attributed to DeJong. To attribute the conduct of the other lieutenants through jointly undertaken criminal activity, pursuant to USSG § 1B1.3(a)(1)(B), four criteria must be met: (1) the acts at issue must be "within the scope of the jointly undertaken" activity; (2) the acts must have been performed in furtherance of that activity; (3) the acts undertaken by others must be reasonably foreseeable to the defendant; and (4) the acts must have "occurred during the commission of the offense of conviction." Since the offense of conviction here is for a crime charged as occurring within 2016, any acts of a similar nature occurring before or after 2016 would not have "occurred during the commission" of that offense. The information provided in DeJong's sentencing memorandum which appears to form the basis for this Court's related concerns lack specificity as to when the subject communications occurred making it impossible, even under a preponderance standard, to ascertain if they were made during the operative time period of the offense of conviction.   Similarly, DeJong's sentencing memorandum references discrete communications received from lieutenants on a handful of occasions; it is respectfully submitted these limited communications are insufficient to make, for example, an entire year of loss associated with a particular lieutenant reasonably foreseeable to DeJong.

---

difficult to imagine these records were maintained in a similar fashion as is presumed regarding other official records of the State Police that were timely discovered.

Finally, the activity described in the sentencing memorandum is similar to the kind of coordination of activity described in Application Note 4(C)(iv). To analogize those circumstances, the Lieutenants would be similarly situated to Defendant K, who is responsible for top-to-bottom wholesale distribution of contraband, whereas the Troopers, such as DeJong, would be similarly situated to Defendants L & M, who are only responsible for acts at their level in the distribution chain. Under that analogy, the activity of the lieutenants would not be attributable to DeJong (or the other Troopers) whereas the activity of DeJong would be attributable to the lieutenants. Given the context of hierarchy and chain of command within which the instant offense conduct occurred, undersigned counsel submits this would be the proper way to view any jointly undertaken activity which this Court finds was conducted.[2]

## II.     Additional Proffers

As set forth in DeJong's original sentencing memorandum, he gave a lengthy proffer with the Massachusetts Attorney General's Office in connection with a parallel investigation being conducted by that office. Following DeJong's first sentencing hearing before this Court, he also proffered twice with the government on May 16 and 24, 2019. Although the government found the information he provided to be consistent with what he disclosed during his proffer with the state Attorney General's Office, the government has declined to recommend a sentencing reduction, pursuant to USSG § 5K1.1, because its utility was limited to historical corroboration.

---

[2] Notably, in a letter to the court for purposes of sentencing in *U.S. v. McAuliffe*, 1:19-cr-10056-DJC, ECF#34-1, the defendant there also made statements similar to DeJong by advising the court of his awareness that other troopers were engaging in the same misconduct as well as that their superior officers knew what was occurring. It is respectfully submitted that DeJong's guidelines ought to be calculated in the same manner employed in *McAuliffe* which attributed loss for only those hours he himself fraudulently claimed to have worked.

However, undersigned counsel respectfully requests this Court give due and appropriate weight to the usefulness of his cooperation in the parallel state investigation. Specifically, as discussed leading up to, and during, his first sentencing hearing, undersigned counsel respectfully request this Court take into consideration DeJong's willingness to have the fact of his cooperation shared publicly, as well as the fact that his decision to cooperate *voluntarily* was made even though he was expressly advised he was not a target of that (or any other related state investigation), that he was not likely to be charged in state court, and that the government had apparently informed state prosecutors that they would not be inclined to credit his state cooperation towards his federal sentence. Moreover, the lead prosecutor, AAG Jim O'Brien, has advised undersigned counsel they found DeJong to be "very helpful," that his proffered information was complete and detailed, and that he provided names and details, some of which were new to their investigation. As a result, DeJong has been advised he is likely to be called as a witness should there be a trial in the State's case(s), a call to action he will heed regardless of the outcome of the instant proceedings; seeing it as his duty and the most effective act of contrition he can muster.

## III.    Comparative Sentencing

DeJong is the last remaining trooper among the related cases to be sentenced; his fellow troopers were sentenced as follows[3]:

---

[3] Although not connected with the related federal cases, Sergeant William J. Woodley of the Boston Police Department entered into a plea agreement with the Suffolk County District Attorney's Office to an eighteen (18) month continuation without a finding for the fraudulent collection of approximately $13,000 in overtime he never worked.

| Defendant | Loss | Term | Fine |
|---|---|---|---|
| Paul Cesan<br>No. 18-cr-10383-DPW | $29,287 | Time served<br>1 year SR | $5,000 |
| Gary Herman<br>No. 18-cr-10326-RWZ | $12,468 | Time Served<br>3 months HC<br>1 year SR | $0 |
| David W. Wilson<br>No. 18-cr-10290-RGS | $12,450 | Time served<br>6 months HC<br>2 years SR | $0 |
| Eric Chin<br>No. 18-cr-10384-RGS | $7,125 | Time Served<br>3 months HC<br>1 year SR | $0 |
| Gregory Raftery<br>No. 18-CR-10203-WGY | $51,337 | 3 months<br>imprisonment<br>1 year SR | $0 |
| Kevin Sweeney<br>No. 18-CR-10286-NMG | $11,103 | 2 months<br>imprisonment<br>1 year SR | $4,000 |
| Heath McAuliffe<br>No. 19-CR-10056-DJC | $7,860 | Time served<br>1 year SR | $4,000 |

The term of incarceration in *Raftery*—three (3) months imprisonment—serves as the ceiling among the related cases and was still half of what the government recommended at sentencing; the only other incarcerative term imposed was in *Sweeney* for a period of two (2) months. Unsurprisingly, *Raftery* represents the greatest calculated loss among the related cases. The other five (5) sentences serve as the floor; each imposed a duration of time served, most of which also included a requirement that some portion of supervised release be served in home confinement with GPS monitoring.

Undersigned counsel respectfully submit that DeJong stands on a parity in terms of loss with those defendants in *Herman* and *Wilson* (approximately $12,000 to DeJong's $14,000), and on similar footing with the defendant in *Cesan* in terms of efforts to address their past criminal misconduct. As set forth above, DeJong proffered twice with the government on May 16 & 24,

2019 following his initial sentencing hearing. Also as set forth above, these proffer sessions were preceded by a proffer he gave with the Massachusetts Attorney General's Office in connection with a parallel state proceeding; undersigned counsel have been advised that if that matter proceeds to trial, DeJong would be called as a witness, which illustrates the utility of the information he provided.

Judge Woodlock's apparent reasoning in *Cesan* is particularly relevant here in light of the similar positions occupied by DeJong and the defendant in that case. There, Judge Woodlock noted at the outset of his explanation of the sentence he imposed "the overarching concerns of Section 3553," one of its "touchstone[s]," which "instruct the judge to avoid disparities." *Cesan Tr.* at 23, 24. *See also id.* at 24 ("And now we have a track record of sentences in this case that shapes what might otherwise be my impulses in imposing a sentence in this case."). Judge Woodlock then explained that the need for general deterrence pointed His Honor "in the direction of time to be served, time in jail," *id.* at 27, which remained the case even though that defendant "ha[d] demonstrated to me as clearly as he can that he is at the very highest level of status among the defendants in the so called related cases, someone who's done everything he can to address his criminal past." *Id.* at 28-29. But Judge Woodlock explained that what ultimately animated his decision to sentence the defendant to time served was "a different obligation":

> That different obligation, as I said, is grounded in the Sentencing Reform Act itself and the need to avoid disparity as a general proposition. And I cannot in good conscience impose a sentence on this defendant more severe than has been imposed on other similarly situated defendants by several of my colleagues

*Id.* at 30.

In sum and for all the reasons set forth in the defendant's original sentencing memorandum, the loss amount here (less than $15,000), as well as DeJong's efforts to address

his past criminal conduct in the responsive manner he is best able, sets him among those other similarly situated defendants each of whom have been sentenced to time served and most of whom were additionally required to serve a period of time in home confinement. Undersigned counsel respectfully urge this Honorable Court, for the same reasons elucidated by Judge Woodlock, to sentence DeJong accordingly.

Dated: September 5, 2019

Respectfully submitted,
DAREN DEJONG
By and through his attorneys,

 /s/ *R. Bradford Bailey*
R. Bradford Bailey, BBO#549749
Adamo Lanza, BBO#689190
BRAD BAILEY LAW, P.C.
44 School Street, Suite 1000B
Boston, Massachusetts 02108
Tel.: (857) 991-1945
Fax: (857) 265-3184
brad@bradbaileylaw.com

**Certificate of Service**

I, R. Bradford Bailey, hereby certify that on this the 5th day of September, 2019, I caused a true copy of the foregoing motion to be served upon all necessary parties to this matter by virtue of electronically filing the same via the CM/ECF system.

*/s/ R. Bradford Bailey*
R. Bradford Bailey, Esq.