UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | )  Crim. No. 18-cr-10307-MLW |
| v. | ) |
| | ) |
| DAREN DEJONG, | ) |
| Defendant. | ) |

## GOVERNMENT'S SUPPLMENTAL SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant U.S. Attorneys, requests that on February 4, 2020 the Court sentence defendant, Daren DeJong (hereinafter, "defendant" or "DeJong"), to a six month term of imprisonment, a sentence at the low end of the United States Sentencing Guidelines ("Guidelines") as calculated by the parties in their Plea Agreement.

**Facts**[1]

**A.    The May 2, 2019 Sentencing Hearing**

On May 2, 2019, the Court began the sentencing hearing for this Defendant. The Court commenced by noting that it was first obliged calculate the correct Guideline Sentencing Range ("GSR"), a proposition neither party disputed. Tr. 5/2/19, p. 6. The Court then summarized the findings of the First Pre-Sentence Report ("First PSR"), noting that the amount of loss calculated

---

[1] The facts underlying the charges in this matter are set forth in the government's first sentencing memorandum dated April 17, 2019. [D. 46]. The government submits this memorandum to incorporate discussion of matters that have arisen since the sentencing hearing began on May 2, 2019. [D. 59, 61].

1

by Probation (approximately $31,000) exceeded the amount of loss detailed in the plea agreement (approximately $14,000) resulting in a difference in the GSR.  Tr. 5/2/19, p. 7-10.

The parties made argument for the sentences they respectively proposed: the government seeking a six month sentence; and the defendant arguing for one year of probation with six months to be served on home confinement.  Tr. 5/2/19, p. 38-47; 47-65.  After the parties' arguments, DeJong addressed the Court.  Tr. 5/2/19, p. 65-68.

The Court chose to continue the proceedings expressing concern that it had not received the information it needed to determine the guidelines and that it needed to determine whether the government had foregone conspiracy charges.  The Court gave the government until May 9, 2019 to respond to those issues.  The Court further continued the matter to allow DeJong to continue his cooperation with state authorities.  Tr. 5/2/19, p. 70-72.

### B. Events Following the Sentencing Hearing

On May 8, 2019, the government filed a response to the Court's Order, noting that: (1) it had provided all information in its possession relative to DeJong to the Court on February 19, 2019; (2) the government had learned of the admissions in DeJong's sentencing memorandum for the first time on April 19, 2019; (3) that the government had attempted to meet with DeJong in both June 2018 and November 2018, but that DeJong had refused both times; and (4) that the government would conduct a proffer of the defendant within two weeks. [D. 64].[2]

On May 17, 2019, the Court directed that the parties file a further report by May 27, 2019. On May 27, 2019, the parties filed a further status report noting that DeJong had proffered with

---

[2] The government also provided loss figures for individuals implicated in the defendant's sentencing memorandum [D. 64], ¶ 3.

the United States on May 16, 2019 and May 24, 2019, and that DeJong had provided the information that had been disclosed to the Attorney General's Office on April 10, 2019. [D. 66].

### C. State Police's Discovery of 2013 and 2014 Materials

On June 4, 2019, the Massachusetts State Police contacted the United States Attorney's Office to report that they had recently discovered a number of boxes of materials containing records of Troop E dating from prior to 2015. A significant portion of these materials and records were not relevant to this office's Troop E investigation, *i.e.*, 2004 Democratic National Convention operational plans; a Sail Boston security plan; asset forfeiture materials; OUI trainings; towing documents; cruiser crash reports dating back to 1984; and fatal crash reports dating to 1982, *etc*.

There were, however, some materials related to this case, including agency (MSP) copies of citations dating from prior to 2015 which were located in several of the former Troop E barracks, including the Weston Barracks, where DeJong had been assigned. These materials contained only a fraction of the citations from those years.

In response to this notification from MSP, in addition to reviewing the recently identified materials, the government renewed its requests for previously subpoenaed materials from 2013 and 2014 relating to DeJong. In response to the government's renewed requests, on June 21, 2019, MSP provided the government with 2013 and 2014 payroll records for DeJong. On June 26, 2019, MSP provided the government with: (1) fuel records evidencing the cruiser assigned to

DeJong dating from January 2012; and (2) radio data for the cruiser to which DeJong is believed to have been assigned dating from August 2013[3] through the end of 2014.

Using the same methodology as was utilized to calculate the 2015 and 2017 loss, the government used these materials to calculate the potential loss attributable to 2013 and 2014. As a result of that review, on July 24, 2019, the government provided a further letter to probation estimating that DeJong was not present, and not working for 376 hours of AIRE overtime and 156.75 hours of X-Team overtime from August 2013 through December 2014.

The government calculated the total loss to be $36,844.89, for that period:

259.5 hours of estimated loss from August 2013 through March 2014
$(259.5*67.28) = \$17,459.16$
121 hours of estimated loss from April 2014 through July 2014
$(121*70.36) = \$8,513.56$
152.25 hours of estimated loss from August 2014 through December 2014
$(152.25*71.41) = \$10,872.17.$[4]

In making these calculations, the government noted that it relied upon records and data sets less comprehensive than those that were used to calculate the loss for the Plea Agreement (2016).

### D. Defendant's First Supplemental Sentencing Memorandum

On September 5, 2019, DeJong filed a supplemental sentencing memorandum challenging the reliability of the loss figures from 2013, 2014, and 2015. In support, the defendant argued that another Judge of this Court had been reluctant to attribute loss based solely

---

[3] The system maintained by MSP did not have radio records for the cruiser believed to have been assigned to DeJong prior to that date

[4] In response to a request from Probation, on November 21, 2019, the government sent a further letter detailing the exact loss figures involved for 2013-2014.

upon a comparison between payroll records, radio records, and cruiser fuel records. [D. 67], p. 1-2. The defendant further objected to the Court including loss figures for Lieutenants with who the defendant had allegedly conspired. [D. 67], p. 3-4.

In addition, while DeJong acknowledged that the government had declined to file a motion under USSG §5K1.1, DeJong asked that the Court, in its discretion under Section 3553(a), afford consideration to the efforts to assist state authorities. [D. 67], p. 4-5.

Finally, DeJong argued that his proposed sentence of one year probation would avoid unwarranted sentencing disparities in this matter. [D. 67], p. 6-8.

E. The Revised Pre-Sentence Report[5]

In the PSR most recently revised on November 21, 2019 ("Revised PSR"), Probation's analysis mirrors that of the parties, except that Probation has included, as relevant conduct, loss amounts from 2013-2014 ($32,497.75), 2015 ($15,992.75), and 2017 ($1,050). Combined with 2016 loss, Probation has calculated a total loss of $63,603. PSR, ¶26-28.

The additional attributed loss leads to a further increase of four points to the Guideline calculation, due to a six point increase under USSG 2B1.1(b)(1)(D), because the amount of loss is greater than $40,000, but less than $95,000. PSR, ¶34.

---

[5] The government's description of the Plea Agreement and its Guidelines calculation is detailed in its First Sentencing memorandum.

After acceptance or responsibility, Probation has determined a total offense level of 13. For an individual in criminal history category I, that offense level results in a GSR of 12 to 18 months' imprisonment.[6]

## **ARGUMENT**

The government intends to abide by its plea agreement and recommend a sentence of six months, in accord with the agreement. The government understood when it entered into its plea agreement that it would be making a sentence recommendation tied to the 2016 conduct of this defendant. At the time, the government was uncertain of the likelihood it could prove 2015 loss beyond a reasonable doubt and/or the amount of any loss.[7] The defendant, for his part, gave up substantial constitutional rights, agreeing to plead guilty. Both sides obtained something from the bargain. *See, e.g., United States v. Reyes-Santiago*, 804 F.3d 453, 476 (1st Cir. 2015) ("As we have emphasized in the past, a defendant entering into a plea agreement with the government undertakes to waive certain fundamental constitutional rights; because of that waiver, the government is required to meet the most meticulous standards of both promise and performance.") (quotation omitted).

For the reasons previously stated in the first sentencing memorandum, the government continues to believe that the factors set forth in 18 U.S.C. §3553(a), including: the nature and

---

[6]  The government continues to object to the GSR as calculated by Probation, noting it is bound by the Plea Agreement to calculate the guidelines in accordance with section 3 of the Plea Agreement. *See* Government's First Sentencing Memorandum, [D. 46], p. 3-4.

[7]  The cases against former troopers, while sharing some similarity, were unique. For example, in the case of Eric Chin, the records available did not allow the government to prove any overtime misconduct in 2015. In the case of Kevin Sweeney, the government was unable to prove any overtime loss from January through September 2016.

circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the conduct; dictate a sentence of six months incarceration, a one year term of supervised release, a fine within the Guideline sentencing range calculated by the Court (unless the Court finds that the Defendant is not able to pay a fine) and the payment of restitution to the MSP.

## Conclusion

For the foregoing reasons, and the reasons previously stated in its prior sentencing memorandum and argument, the government requests that the Court impose a sentence of six months incarceration, a one year term of supervised release, a fine within the Guideline sentencing range calculated by the Court (unless the Court finds that the Defendant is not able to pay a fine) and the payment of restitution to the MSP.

Respectfully submitted,
ANDREW E. LELLING
United States Attorney

By:   */s/ Mark Grady*
MARK GRADY
DUSTIN CHAO
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Mark Grady*
MARK GRADY
DUSTIN CHAO
Assistant U.S. Attorneys

Date:   January 27, 2019